# In the United States Court of Federal Claims

No. 18-1929C

Filed: February 5, 2020

| | |
|---|---|
| BRYAN D. DOWNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | RCFC 12(b)(1); Subject-Matter |
| v. ) | Jurisdiction; 5 U.S.C. § 5538; Differential |
| ) | Pay. |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

*Scott A. Felder*, Counsel of Record, *Wesley E. Weeks*, Of Counsel, Wiley Rein LLP, Washington, DC, for plaintiff.

*Joseph A. Pixley*, Trial Attorney, *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC; *Michael Townsend, Jr.*, Of Counsel, United States Army Legal Services Agency, Fort Belvoir, VA, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

### I.    INTRODUCTION

Plaintiff, Bryan D. Downey, brings this action challenging the government's denial of certain reservist differential pay that plaintiff alleges he is entitled to pursuant to 5 U.S.C. § 5538. *See generally* Compl. The government has moved to dismiss this action for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Def. Mot. For the reasons discussed below, the Court **DENIES** the government's motion to dismiss.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this pay action, plaintiff seeks reservist differential pay that he alleges has been wrongfully denied for the period of time that he was mobilized to active duty service in the United States Army, pursuant to 5 U.S.C. § 5538. *See generally* Compl. As relief, plaintiff seeks to recover monetary damages from the government in the amount of $11,592.55. *Id.* at Prayer for Relief.

#### 1.     Plaintiff's Mobilization To Active Duty

Plaintiff serves in the United States Army ("Army") and he currently holds the rank of Lieutenant Colonel (O-5). *Id.* at ¶ 9. Plaintiff is also a civilian employee of the National Reconnaissance Office ("NRO"). *Id.* at ¶ 11.

On or about June 24, 2016, plaintiff volunteered for active duty service in the Army and he received mobilization orders on that same date, pursuant to title 10, United States Code, section 12301(d).[2] Def. Mot. at 2; Compl. Ex. A at 1. Plaintiff began his mobilization on July 25, 2016, and he remained in active duty status until September 30, 2018. Compl. Ex. A at 1, 3.

During his active duty service, plaintiff initially received pay at the rate of a Lieutenant Colonel O-5 with 24 years of service—approximately $6,269.01 per bi-monthly pay period. Compl. at ¶ 10; Def. Mot. at 3. Plaintiff later received pay at the rate of a Lieutenant Colonel O-

---

[1] The facts in this Memorandum Opinion and Order are taken from the complaint ("Compl.") and the exhibits attached thereto ("Compl. Ex."); the government's motion to dismiss ("Def. Mot.") and the exhibits attached thereto ("Def. Ex."); and plaintiff's response and opposition to the government's motion to dismiss ("Pl. Resp."). Unless otherwise noted, the facts recited herein are undisputed.

[2] Section 12301(d) provides that:

> At any time, an authority designated by the Secretary concerned may order a member of a reserve component under his jurisdiction to active duty, or retain him on active duty, with the consent of that member. However, a member of the Army National Guard of the United States or the Air National Guard of the United States may not be ordered to active duty under this subsection without the consent of the governor or other appropriate authority of the State concerned.

10 U.S.C. § 12301(d).

2

5 with 26 years of experience—approximately $6,471.29 per bi-monthly pay period. *Id.*

During the period of time that plaintiff was mobilized to active duty, he would have received civilian pay at the NRO at the GG-15, Step 7 rate of pay—approximately $6,404.25 per bi-monthly pay period—until August 2016. Compl. at ¶ 11; Def. Mot. at 3. After August 2016, plaintiff would have been compensated at the GG-15, Step 8 rate of pay—approximately $6,841.66 per bi-monthly pay period. *Id*.

### 2. 5 U.S.C. § 5538

As background, pursuant to title 5, United States Code, section 5583, federal agencies must provide a payment to make up the difference between a civilian government employee's civilian and military pay to eligible employees who are activated to military duty. 5 U.S.C. § 5538. Specifically, Section 5538 requires that federal agencies pay a differential to eligible civilian government employees who are members of the Reserve or National Guard and are called, or ordered, to active duty under certain provisions of law. 5 U.S.C. § 5538(a). And so, Section 5538 requires that federal agencies pay a reservist differential equal to the amount by which an employee's projected civilian basic pay for a covered pay period exceeds the employee's actual military "pay and allowances" (the "reservist differential"). *Id.*

### 3. Plaintiff's Reservist Differential Pay

Plaintiff received reservist differential pay during his mobilization to active duty during the period July 25, 2016 to April 2017. Compl. at ¶¶ 19, 23; Def. Mot. at 3. But, it is undisputed that the Defense Finance and Accounting Service ("DFAS") stopped making these payments after April 2017, based upon guidance issued by the Office of Personnel Management ("OPM") that plaintiff is not eligible to receive a reservist differential.[3] Compl. at ¶ 23; Def. Mot. at 3.

As a result of the OPM's guidance, DFAS began collecting the differential pay payments previously made to plaintiff in October 2017. Compl. at ¶ 23. Plaintiff maintains that he has "lost approximately $11,592.55 as a result of [the government's] wrongful failure to pay him the differential pay to which he is entitled." Compl. ¶ at 24.

---

[3] In June 2015, the OPM issued guidance regarding Section 5538 which provided, in relevant part, that that "qualifying active duty does not include voluntary active duty under 10 U.S.C. § 12301(d)." *See* OPM Policy Guidance Regarding Reservist Differential Under 5 U.S.C. § 5538 at 18 (Reissued 2015).

### B.     Procedural Background

Plaintiff commenced this action on December 17, 2018.  *See generally id.*  On June 17, 2019, the government filed a motion to dismiss, pursuant to RCFC 12(b)(1).  *See generally* Def. Mot.

On July 29, 2019, plaintiff filed a response and opposition to the government's motion to dismiss.  *See generally* Pl. Resp.  On August 15, 2019, the government filed a reply in support of its motion to dismiss.  *See generally* Def. Reply.  On September 9, 2019, plaintiff filed a sur-reply.  *See generally* Pl. Sur-Reply.

The government's motion to dismiss having been fully briefed, the Court resolves the pending motion.

### III.    LEGAL STANDARDS

### A.     RCFC 12(b)(1) And Jurisdiction

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1).  But, plaintiff bears the burden of establishing subject-matter jurisdiction, and he must do so by a preponderance of the evidence.  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim."  *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute. . . ."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act is, however, "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (alterations original).  And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003).

"[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).  A statute that provides for "solely discretionary payment of money does not give rise to a right to recover money damages from the United States." *Roberts v. United States*, 745 F.3d 1158, 1163 (Fed. Cir. 2014) (quoting *Adair v. United States*, 648 F.2d 1318, 1322 (Ct. Cl. 1981) (internal quotations omitted)).  And so, to determine whether a statue is money-mandating, "[t]he Court starts, and usually ends, with the text of the laws or regulations that are in question." *Contreras v. United States*, 64 Fed. Cl. 583, 592 (2005).

### B.   5 U.S.C. § 5538

Title 5, United States Code, section 5538 entitles certain civilian government employees who mobilize to active duty military service to differential pay.  5 U.S.C. § 5538.  Specifically, Section 5538, provides, in relevant part, that:

> Nonreduction in pay while serving in the uniformed services or National Guard
>
> (a) An employee who is absent from a position of employment with the Federal Government in order to perform active duty in the uniformed services pursuant to a call or order to active duty under section 12304b of title 10 or a provision of law referred to in section 101(a)(13)(B) of title 10 shall be entitled, while serving on active duty, to receive, for each pay period described in subsection (b), an amount equal to the amount by which --

> (1) the amount of basic pay which would otherwise have been payable to such employee for such pay period if such employee's civilian employment with the Government had not been interrupted by that service, exceeds (if at all)
>
> (2) the amount of pay and allowances which (as determined under subsection (d))--
>
>> (A) is payable to such employee for that service; and
>>
>> (B) is allocable to such pay period.

5 U.S.C. § 5538(a).

The differential pay authorized by Section 5538 is payable for each pay period that the employee is entitled to re-employment rights and the employee does not receive basic pay. 5 U.S.C. § 5538(b). To successfully bring a claim for reservist differential pay, a civilian government employee must show that he or she: (1) was absent from his or her employment with the federal government to perform active duty in the uniformed service; (2) was mobilized pursuant to section 12304b of title 10, or a provision of law referred to in section 101(a)(13)(B) of title 10; (3) was entitled to re-employment rights pursuant to chapter 43 of title 38; and (4) did not otherwise receive basic pay to which he or she was entitled. 5 U.S.C. § 5538(a)-(b).

      C.      **The USERRA And The CSRA**

The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") prohibits discrimination in employment upon the basis of military service. *See generally* 38 U.S.C. §§ 4301-4335; *see also Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1012 (Fed. Cir. 2001). In this regard, Section 4311 of USERRA provides that:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a).

If a member of the uniformed services who is a civilian government employee asserts a discrimination claim against a federal agency under USERRA, the Merit Systems Protection Board ("MSPB") has exclusive jurisdiction to adjudicate this claim. 38 U.S.C. § 4324(b);

6

*Dziekonski v. United States*, 120 Fed. Cl. 806, 810 (2015) ("Because the USERRA vests the [MSPB] with exclusive jurisdiction over veterans' employment actions against federal executive agencies, this [C]ourt cannot exercise its jurisdiction to hear plaintiff's claims.").

The Civil Service Reform Act ("CSRA") provides a framework to evaluate adverse personnel actions taken by a federal executive agency against civilian government employees. 5 U.S.C. §§ 7511-7515; *see also United States v. Fausto*, 484 U.S. 439, 443 (1988). Specifically, Section 7512 governs certain types of adverse personnel actions involving federal civilian government employees, including reduction in pay. 5 U.S.C. §§ 7512(4); *Fausto*, 484 U.S. at 446-47. An employee against whom such an adverse personnel action has been taken is entitled to appeal that adverse action to the MSPB. 5 U.S.C. §§ 7513(d), 7703; *see also Fausto*, 484 U.S. at 447.

## IV. LEGAL ANALYSIS

The government has moved to dismiss this matter for lack of subject-matter jurisdiction upon the ground that plaintiff may only bring his claim for reservist differential pay before the Merit Systems Protection Board, pursuant to either the Uniform Services Employment and Reemployment Rights Act or the Civil Service Reform Act. Def. Mot. at 6-10; Def. Reply at 2-8. Plaintiff counters that this Court may consider his claim, because 5 U.S.C. § 5538 is a money-mandating source of law that he may rely upon to establish jurisdiction under the Tucker Act. Pl. Resp. at 5-8.

For the reasons set forth below, the Court agrees. And so, the Court **DENIES** the government's motion to dismiss.

### A. The Court May Consider Plaintiff's Claim

As an initial matter, a careful reading of Section 5538 and the complaint makes clear that plaintiff has met his burden to establish jurisdiction under the Tucker Act.

It is well-established that to pursue a claim against the United States under the Tucker Act, plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United*

7

*States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003); 28 U.S.C. § 1491(a)(1).  And so, the Court must first consider whether plaintiff has identified a money-mandating statute, or other source of law, to establish Tucker Act jurisdiction in this case.

The Federal Circuit has held that "a statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).  And so, to determine whether the statute upon which plaintiff relies in this case is money-mandating, the Court starts, and usually ends, with the text of the statute in question.  *Contreras v. United States*, 64 Fed. Cl. 583, 592 (2005).

Plaintiff identifies 5 U.S.C. § 5538 to establish Tucker Act jurisdiction.  Compl. at ¶¶ 3-5.  As both parties appear to agree, the plain text of Section 5538 makes clear that this statute is money-mandating.  Pl. Resp. at 5-6; Def. Reply at 2.

In this regard, Section 5538 provides, in relevant part that:

Nonreduction in pay while serving in the uniformed services or National Guard

(a) An employee who is absent from a position of employment with the Federal Government in order to perform active duty in the uniformed services pursuant to a call or order to active duty under section 12304b of title 10 or a provision of law referred to in section 101(a)(13)(B) of title 10 ***shall*** be entitled, while serving on active duty, to receive, for each pay period described in subsection (b), an amount equal to the amount by which --

> (1) the amount of basic pay which would otherwise have been payable to such employee for such pay period if such employee's civilian employment with the Government had not been interrupted by that service, exceeds (if at all)
>
> (2) the amount of pay and allowances which (as determined under subsection (d))--
>
>> (A) is payable to such employee for that service; and
>>
>> (B) is allocable to such pay period.

8

5 U.S.C. § 5538(a) (emphasis supplied).  Because Section 5538 requires that an eligible civilian government employee "shall be entitled" to a reservist differential, this statute makes clear that the government's obligation to pay a reservist differential is mandatory.

The text of Section 5538 also makes clear that the government has no discretion regarding the manner and method of making such payment, by providing that the "[a]mounts under this section *shall* be payable with respect to each pay period."  5 U.S.C. § 5538(b) (emphasis supplied).  The statute similarly mandates that the reservist differential "*shall* be paid" by the employee's employing agency.  5 U.S.C. § 5538(c) (emphasis supplied).

The plain text of Section 5538 shows that Congress intended for the government's obligation to pay a reservist differential to be mandatory.  And so, the Court reads this statute to be money-mandating.  *Agwiak v. United States*, 347 F.3d 1375, 1380 (Fed. Cir. 2003) (holding that the use of the word "shall" in a statute generally indicates that the statute is money-mandating); *see also McBryde v. United States*, 299 F.3d 1357, 1361 (Fed. Cir. 2002); *Contreras*, 64 Fed. Cl. at 592-93.

A review of the complaint also shows that plaintiff alleges a plausible claim for reservist differential pay under Section 5538 in this case.  *Mesa Grande Band of Mission Indians v. United States*, 121 Fed. Cl. 183, 190 (2015) (citations omitted) (holding that "[i]n determining whether the plaintiff has pled adequate facts to allow the court to infer that his or her entitlement to relief is plausible—not merely possible—the court must draw on its judicial experience and common sense, and must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff.").  To bring a successful claim for reservist differential pay, plaintiff must show four things, namely, that he:  (1) was absent from his or her employment with the federal government to perform active duty in the uniformed service; (2) was mobilized pursuant to section 12304b of title 10, or a provision of law referred to in section 101(a)(13)(B) of title 10; (3) was entitled to re-employment rights pursuant to chapter 43 of title 38; and (4) did not otherwise receive basic pay to which he or she was entitled.  5 U.S.C. § 5538(a)-(b).  Plaintiff plausibly alleges facts in the complaint to satisfy each of these requirements.

First, to show that he was absent from his civilian government employment to perform active duty military service, plaintiff alleges that he "was absent from his federal civilian

9

employment with the NRO in order to perform active duty military service in support of contingency operations." Compl. at ¶ 26. Plaintiff also alleges in the complaint that his mobilization orders were issued "pursuant to 10 U.S.C. § 12301(d) during a time of national emergency declared by the President," to show that he has been mobilized pursuant to a proper provision of law. *Id.*; *see also id.* at ¶ 16.

Plaintiff also alleges in the complaint that he was "entitled to re-employment rights with respect to his position within the NRO under chapter 43 of title 38, United States Code," to satisfy the requirement that he show an entitlement to re-employment rights. *Id.* at ¶ 27. Lastly, plaintiff alleges that he "did not receive the pay to which he was otherwise entitled by virtue of his employment with the NRO during his mobilization," to show that he did not otherwise receive basic pay. *Id.* at ¶ 28.

Because plaintiff identifies a money-mandating source of law to support his claim for reservist differential pay—and he alleges a plausible claim under Section 5538 in the complaint—the Court possesses subject-matter jurisdiction to consider his claim.

### B. The Government's Arguments That Plaintiff's Claim Must Be Brought Before The MSPB Are Not Persuasive

The government's arguments that plaintiff may only bring a claim for reservist differential pay before the MSPB, pursuant to either the USERRA or the CSRA, are also unpersuasive. The complaint makes clear that plaintiff is not alleging a claim under either of these statutes.

First, the Court simply does not read the Uniformed Services Employment and Reemployment Rights Act to be applicable to plaintiff's claim in this case. The USERRA prohibits discrimination in employment upon the basis of military service. *See generally* 38 U.S.C. §§ 4301-4335; *see also Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1012 (Fed. Cir. 2001). But, this case does not involve a claim of discrimination based upon plaintiff's military service. *See generally* Compl.; *see also* 38 U.S.C. § 4311; *Sheehan*, 240 F.3d at 1012. Rather, plaintiff alleges that he is entitled to receive certain pay, based upon the difference between the military pay that he received while mobilized to active duty and the pay that he would have received during the same time period had he been working as a civilian government employee with the NRO. Compl. at ¶ 1 (stating that "[t]his is an action for denial of pay due the Plaintiff under 5

10

U.S.C. § 5538 . . . ."). And so, the government's reliance upon the USERRA to dismiss this action is misplaced.

The Court is also not persuaded by the government's contention that plaintiff must have brought his claim for reservist differential pay pursuant to the CSRA. In its motion to dismiss, the government argues that plaintiff's claim involves a reduction in pay, and that such a claim must be brought before the MSPB pursuant to the CSRA. Def. Mot. at 9-10; Def. Reply at 2-7.

As the government correctly observes in its dispositive motion, the CSRA covers claims based upon major adverse personnel actions against civilian government employees, including a reduction in pay. Def. Mot. at 9-10; *see also* 5 U.S.C. § 7512(4); *United States v. Fausto*, 484 U.S. 439, 446-47 (1988). But, plaintiff does not allege in the complaint that the NRO reduced his civilian government pay. *See generally* Compl. In fact, plaintiff alleges that the amount of his civilian government pay *increased* while he was mobilized to active duty. *Id.* at ¶ 11 (alleging that "[u]ntil August 2016, LTC(P) Downey was paid as a GG-15, Step 7. Since August 2016, LTC(P) Downey has been paid as a GG-15, Step 8.").

As discussed above, plaintiff contends in this action that he is entitled to receive pay based upon the *difference* between the amount of military pay that he received while mobilized to active duty and the amount of pay that he would have received during the same time period had he been working at the NRO. *Id.* at ¶ 1. Given this, the government simply has not shown that plaintiff must pursue this claim before the MSPB.

## V.    CONCLUSION

In sum, a careful reading of Section 5538 and the complaint makes clear that the Court possesses subject-matter jurisdiction to consider plaintiff's claim for reservist differential pay. And so, for the foregoing reasons, the Court:

1. **DENIES** the government's motion to dismiss; and

2. **DIRECTS** the government to **ANSWER** the complaint on or before **February 19, 2020**.

**IT IS SO ORDERED.**

                                         s/ Lydia Kay Griggsby
                                         LYDIA KAY GRIGGSBY
                                         Judge